UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| STEPHANIE W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:19-cv-00137-RLY-MPB |
| ) | |
| ANDREW M. SAUL Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 18). Plaintiff Stephanie W.,[1] who proceeds in this matter *pro se*, seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed with the reply period passing without filing from Stephanie W. (Docket No. 12; Docket No. 15). It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Stephanie W. is not disabled.

### I. Introduction

On February 26, 2014, Stephanie W. protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

security income. (Docket No. 10-2 at ECF p. 14). In both applications, Stephanie W. alleged disability beginning February 23, 209. (*Id.* at ECF p. 5). The ALJ's original decision (*Id.*) was remanded from the Appeals Council pursuant to a remand from this court.[2] (*Id.* at ECF p. 5). After a post-remand hearing, where Stephanie W. appeared without a representative, an ALJ issued a decision that Stephanie W. was not disabled. (*Id.* at ECF p. 21). The Appeals Council denied Stephanie W.'s request for review of this decision, thereby rendering it the Agency's final decision for the purposes of judicial review. The court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Stephanie W.'s second appeal, which she filed without the assistance of an attorney, largely consists of a brief summary of her ailments and portions of medical records, which she files without explanation. Her brief explicitly states that the ALJ did not develop a complete medical record as Advanced Pain Care Clinic records were missing, as well as records from Dr. Jim and Dr. Khan from 2009. (Docket No. 12 at ECF p. 2). Stephanie W. believes that the ALJ erred at Step 4 because the (unspecified) information was incomplete and the dates range for records obtained. (*Id.*).

## II.     Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her

---

[2] This court remanded the original ALJ's decision directing a full evaluation of Stephanie W.'s claim, including her endometriosis. The court found that the ALJ had failed to obtain Dr. Morrison's treatment records. *See Stephanie W. v. Berryhill*, Case No. 3:17-cv-00105-RLY-MPB (Docket No. 33).

impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520, 416.920(a).

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listings includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similarly listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545, 416.920(e). At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the

3

relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. §§ 404.1560(c)(2), 416.912 and 416.960(c); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### III. Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ— not the court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399– 400 (1971). Accordingly, the court may not reevaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in the decision, but she cannot ignore a line of evidence that undermines the conclusions she made. The ALJ must trace the path

of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## IV.  Analysis

### A.  Statement of Facts

Stephanie W.'s opening "statement of facts," which the court construes as her brief, only objects to the ALJ's assessment of her physical impairments, namely the numbness in her legs and hands, and the burning sensation in her groin (endometriosis). (Docket No. 12). She mentions mental impairments only in passing in her concluding paragraph, where she asserted that her "pain, ache, and mental are not in my head, not [sic] have they ever been." (*Id.* at ECF p. 3). Courts construe pro se briefs liberally, but they still must support and development cogent arguments. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Thus, the court finds that any objections Stephanie W. has to the ALJ's assessment of her mental impairments are waived. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (underdeveloped arguments are waived).

#### 1.  *Endometriosis Records*

In May 2013, Stephanie W. complained to Devin Bell, D.O., of a burning sensation on the left side of her abdomen and left groin that had persisted over a year. (Docket No. 10-8 at ECF p. 35). On physical examination, Stephanie W. had slight pain with the internal rotation of her hip on the left side, but all other results were normal. (*Id.* at ECF p. 36). In July 2013, Dr. Bell contacted Mansoor Khan, M.D., which explained that they discharged Stephanie W. because they did not believe that her pain related to the spine. (*Id.* at ECF p. 49). Also in July 2013, Stephanie W. returned to Dr. Bell complaining of continued burning in her left hip. (*Id.*).

5

But her physical examination was unremarkable, as was her pelvic ultrasound. (*Id.* at ECF p. 51).

In August 2013, Stephanie W. underwent an endometrial biopsy that showed no evidence of malignancy. In January 2015, Dr. Jugesh Cheema performed a pelvic ultrasound that showed Stephanie W.'s uterus was normal in size and there was no acute abnormality. (Docket No. 10-11 at ECF p. 20). There was evidence of a slightly complex right ovarian cyst, but Dr. Cheema concluded it was "probably physiologic given its relatively small size" and Plaintiff's age. (*Id.*).

In February 2015, Stephanie W. had a gynecologic examination with Dr. Paul Morrison. (Docket No. 10-17 at ECF p. 5). Stephanie W. complained of left-sided pelvic pain and reported that she previously underwent a Novasure ablation and was pleased with the results. (*Id.*). She also reported that she had been treated for endometriosis, which helped "for several years." (*Id.*). Stephanie W.'s physical examination was normal, and she proceeded with a diagnostic scope to destroy the endometriosis. (*Id.* at ECF pp. 7–8). Five days post laparoscopy she reported ongoing pain and that she was staying at home as much as possible to decrease activities. (*Id.* at ECF p. 10). In April 2015, Stephanie W. reported she was "doing well" and had no complaints. (Docket No. 10-17 at ECF p. 13). Dr. Morrison cleared her to "resume any activities she desires." (*Id.* at ECF p. 14).

In July 2015, Stephanie W. returned for a three-month check-up and reported to Dr. Morrison that she was very happy with the results of the medication, Lupron, in controlling her symptoms. (*Id.* at ECF p. 15). But, at her September 2016 annual examination, she complained of left groin tenderness, but that the Lupron was treating her endometriosis and that this was not the same pain. (*Id.* at ECF p. 18). She also presented to James M. Heinrich, M.D., in July 2015 reporting of left groin pain that worsened with external rotation of her hip. (Docket No. 10-19 at

6

ECF p. 75). Dr. Heinrich noted that x-rays of her hip were negative, and her neurological examination was normal. (*Id.* at ECF pp. 75–76). Five months later, she presented to the emergency room with groin pain, which, upon examination, appeared to be an enlarged lymph node. (Docket No. 10-11 at ECF p. 29).

At her May 2018 annual examination with Dr. Morrison, Stephanie W. reported a sharp shooting pain in her left lower side and pelvis for the past two months. (Docket No. 10-17 at ECF p. 5). Dr. Morrison indicated her physical examination was unremarkable and ordered labs and a pelvic ultrasound, which ultimately showed normal ovaries and adenomyosis on her uterus. (*Id.* at ECF pp. 27–28, 34).

2. *Right Shoulder Impairment Records*

In December 2013, Stephanie W. presented to Dr. Khan for a follow-up visit after a series of sacroiliac joint injections from the previous month and reported right shoulder pain with range of motion. (Docket No. 10-9 at ECF p. 58). In March 2014, she reported pain again with no relief from shoulder injections. (Docket No. 10-8 at ECF p. 78).

In January 2015, Stephanie W. presented to James M. Heinrich, M.D., complaining of right shoulder pain that had persisted for a year. (Docket No. 10-19 at ECF p. 76). Stephanie W. reported some improvement with physical therapy and an MRI confirmed severe tendinosis but no focal tear. (*Id.* at ECF pp. 76–77). On physical examination, Stephanie W. had a tight trapezius muscle on her right side; her neck motion was fairly normal, as was her shoulder motion; and she had fairly good range of motion in her shoulder. (*Id.* at ECF p. 76). Dr. Heinrich advised a course of physical therapy. (*Id.* at ECF p. 76).

In March 2015, Stephanie W. presented to Advanced Pain Clinic, complaining of shoulder pain and reporting significant pain relief for two months after her injections from Dr. Khan. (Docket No. 10-10 at ECF p. 73).

A March 2019 x-ray of Stephanie W.'s right shoulder showed no acute fracture or dislocation, and there was a stable, subtle abnormality of the acromion, possible from "an old healed fracture." (Docket No. 10-19 at ECF p. 83).

*3. Records Related to Stephanie W.'s Degenerative Disc Disease*

Throughout the relevant period, Stephanie W. has undergone a number of diagnostic tests to assess her degenerative disc disease. In August 2010 a pelvis x-ray showed mild degenerative changes of both hips. (Docket No. 10-10 at ECF p. 63). In May 2013, x-rays of Stephanie W.'s hips showed stable or "perhaps mild[] increase in degenerative change," but her hips appeared "intact" without evidence of "significant osteoarthritis or lesion" (Docket No. 10-11 at ECF p. 9). In December 2013, Dr. Khan's examinations showed her FABER Patrick's test was position for pain; a Kemp's test provoked axial low back pain; there was tenderness at her left sacral sulcus; and provocative tests for the left sacroiliac joint were positive for pain. (Docket No. 10-9 at ECF p. 58).

A September 2014 x-ray of Stephanie W.'s neck showed no significant abnormality. (Docket No. 10-10 at ECF p. 62). October 2014 x-rays of Stephanie W.'s lumbar spine and pelvis were normal. (*Id.* at ECF p. 57–58). A January 2016 MRI of the lumbar spine showed mild central disc protrusion at L4-L5 with some mild bilateral foraminal narrowing; mild diffuse disc-osteophyte complex at L5-S1 with facet arthropathy producing moderate bilateral foraminal narrowing. (*Id.* at ECF pp. 53–54). Finally, a January 2018 MRI of the lumbar spine showed multilevel spondyloarthropathy and degenerative changes that were similar to the

8

previous MRI, with some progression of the narrowing of her right side, as well as multi-faceted arthropathy. (Docket No. 10-19 at ECF p. 52).

   4. *Back and Leg Pain Records*

In April 2013, Stephanie W. sought treatment from Dr. Khan for her back pain. (Docket No. 10-8 at ECF p. 65). She had undergone facet joint and sacroiliac joint block injections, and she reported 75-80 percent relief. (*Id.* at ECF pp. 65–66). On physical examination, Stephanie W. had some pain with deep palpation in the left gluteal region, but all four extremities were unremarkable, and she had full strength throughout. (*Id.* at ECF p. 65). She walked with a slightly antalgic gait, had a slight limitation in the range of motion of her left hip, and demonstrated a reduced range of motion of her low back by 30 percent. (*Id.* at ECF p. 65). In May 2013, she indicated that her low back pain persisted, but had improved since the injections. (*Id.* at ECF p. 67). She reported that her medication was effectively controlling her pain. (Docket No. 10-8 at ECF p. 65). Her physical examination was largely unchanged from the previous month. (*Id.* at ECF pp. 67–68).

In March 2014, Stephanie W. returned to Dr. Khan with mild tenderness in her low back, and her sacroiliac joint provocation test was mildly positive. (Docket No. 10-9 at ECF p. 58). Her sensation was intact throughout, and she walked with a slightly antalgic gait. (*Id.* at ECF p. 56). She also had tenderness in her glenohumeral joint. (*Id.*). Two months later, in May 2014, Stephanie W. returned to Dr. Khan with limited range of motion in her low back and tenderness at the lumbosacral junction. She had full muscle strength in her arms and legs. (*Id.* at ECF p. 54).

In January 2015, Stephanie W. sought treatment from Thomas Stratton, M.D., for a referral for pain management of her low back, right shoulder, and left pelvic area. (Docket No.

9

10-10 at ECF p. 33). Her range of motion in her right shoulder was "good," and while there was tenderness in her lower left back, her sensory and motor reflexes were intact. (Docket No. 10-12 at ECF p. 14). Throughout 2015, Stephanie W. presented to Dr. Stratton, reportedly taking over-the-counter medication for her osteoarthritis. (Docket No. 10-10 at ECF pp. 23–26, 30).

At Stephanie W.'s April and May 2015 pain clinic visits, she complained of right neck and shoulder pain, as well as low back pain radiating down her left leg. (*Id.* at ECF pp. 68–77). She reported that standing and walking increased her pain, but that back injections provided significant relief for two months. (*Id.*). Stephanie W.'s gait was normal; she could sit and stand easily; her straight leg raises were negative; and she had some pain in her low back and sacroiliac joint. (*Id.*). Her lumbar spine x-ray was unremarkable. (*Id.*).

In March 2018, Stephanie W. presented to Nicolaus Winters, M.D., complaining of low back pain, and she walked with an antalgic gait favoring her left leg. (Docket No. 10-19 at ECF pp. 64–67). Stephanie W. had pain with range of motion in the lumbar spine, and her straight leg raises were positive on right side. (*Id.* at ECF pp. 64–65). She had full leg strength. (*Id.* at ECF p. 67). She was administered an epidural steroid injection. (*Id.* at ECF p. 69). Throughout early-to-mid 2018, Stephanie W. also sought treatment at Orthopaedic Associates with Mike W. Chou, M.D., complaining of back and leg pain. (*Id.* at ECF pp. 51–59). She reported that her overall pain level improved, but she that she was unable to stand for any length of time without experiencing increased back and leg pain. (Docket No. 10-19 at ECF p. 51). Plaintiff reported a 25 percent relief from the injection she got in March, though she continued to have right leg numbness. (*Id.*).

10

*4. Administrative Hearing Testimony*

In May 2019, Stephanie W. appeared for her hearing, where she chose to proceed without representation. (Docket No. 10-12 at ECF p. 43). The ALJ first asked her about her back pain. (*Id.* at ECF p. 52). Stephanie W. testified to treating recently with Michael Chou, M.D., a neurosurgeon who discussed a spinal cord stimulatory, but required that she first have a psychological evaluation. (*Id.* at ECF pp. 53–54). She reported that past injections in her back blocked the pain "[f]or a short periods of time[.]" (*Id.* at ECF p. 54). She tried physical therapy and took several over-the-counter medications to treat the pain, but neither were successful in relieving her symptoms. (*Id.* at ECF pp. 54–56).

Stephanie W. testified that her endometriosis also caused her pain. (Docket No. 10-12 at ECF p. 59). She stated she continued to see Dr. Morrison, who treated her endometriosis, on an annual basis and he treated her symptoms by prescribing birth control pills. (*Id.* at ECF pp. 59–60). She described her pain as a burning sensation in her groin area and a "[s]harp, stabbing pain[.]" (*Id.*). She also indicated a possible treatment option of a total hysterectomy. (*Id.*).

She also testified that she fell into a manhole several years prior and injured her shoulder, which has caused ongoing pain and limited range of motion. (*Id.* at ECF pp. 61–63). Physical therapy helped by loosening her shoulder and neck muscles. (Docket No. 10-12 at ECF p. 64). She also testified that she had muscle spasms in her hands that made it hard to grasp and hold objects. (*Id.* at ECF p. 65).

Stephanie W. testified she cared for three children, ages 12 to 15. (*Id.* at ECF p. 66). She drove to her doctors' appointments, and two years earlier traveled by car to her father's funeral in Mississippi. (*Id.* at ECF pp. 68–69). She testified that she smokes half a pack of cigarettes per day, and occasionally smokes marijuana. (*Id.* at ECF pp. 69–70). She likes to read, do

11

crossword puzzles, and watch subtitled Chinese-language television programs. (Docket No. 10-12 at ECF pp. 70–71). She also manages her own money and takes care of her hygiene, but her children cooked most of the meals, though she could manage simple microwave meals. (*Id.* at ECF pp. 71–72). Stephanie W. could walk a half block before needing to sit down; sit for 2-4 hours, and stand for up to 20 minutes. (*Id.* at ECF pp. 72–73). She could lift a gallon of milk. (*Id.* at ECF p. 73).

The ALJ explained that he would obtain records from Tri-State Orthopedics, Deaconess Hospital, and Dr. Michael Chou. (*Id.*). A vocational expert testified that a hypothetical individual with Stephanie W.'s age, education, background, and residual functional capacity (RFC), or the most she could do despite her impairments, could perform the tasks of the following jobs: call out operator, information clerk, and surveillance system monitor. (*Id.*).

5. *The ALJ's Sequential Findings*

The ALJ followed the five-step sequential evaluation and ultimately concluded that Stephanie W. was not disabled. (Docket No. 10-12 at ECF p. 21). At step one, the ALJ found that Stephanie W. met the insured status requirements of the Social Security Act through September 30, 2016 and had not engaged in substantial gainful activity since February 23, 2009, the alleged onset date. (*Id.* at ECF p. 16). At step two, the ALJ found that Stephanie W. had the following severe impairments:

> [L]umbar spine degenerative disc disease/degenerative joint disease, cervical spine degenerative disc disease, right shoulder tendinitis/tendinosis/adhesive capsulitis, depression, marijuana use, generalized anxiety disorder, posttraumatic stress disorder, and endometriosis (20 CFR 404.1520(c) and 416.920(c)).

12

(*Id.* at ECF p. 8). At step three, the ALJ found that Stephanie W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 17). After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she can lift/carry ten pounds occasionally and less than ten pounds frequently. She can sit for at least six of eight hours, and stand/walk for about two of eight hours. She can make occasional use of the bilateral lower extremities for pushing and pulling. The claimant can make occasional use of the right upper extremity for overhead reaching and reaching behind the body. She can frequently reach in all other directions. The claimant can frequently push/pull and operate hand controls. She can never climb ladders, ropes, or scaffolding but can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to wetness and dangerous workplace hazards such as exposed moving machinery and unprotected heights. The claimant can understand and remember simple instructions and carry out simple, routine, and rote tasks that require little independent judgment or decision-making. She can tolerate frequent interaction with others, including the public, coworkers, and supervisors.

(*Id.* at ECF p. 10).

At step four, the ALJ concluded that the claimant is unable to perform any past relevant work. (Docket No. 10-12 at ECF p. 19). At step five, the ALJ concluded that the Plaintiff was twenty-five years old on the alleged onset date, or a younger individual, with at least a high school education and an ability to communicate in English. (*Id.* at ECF p. 25). The ALJ then found that there were a significant number of jobs in the economy that Stephanie W. could still perform and, thus, she was not disabled. (*Id.*).

**B.  Discussion**

Stephanie W. argues that the ALJ's determination that she is capable of a reduced range of sedentary work was erroneous, because she did not have full use of her hands and her legs

13

often went numb. She also argues that the ALJ did not develop a complete medical record because Advance Pain Care Clinic, Dr. Jim, and Dr. Khan's 2009 records were missing. Finally, she believes the ALJ erred at Step 4 because the information was incomplete and the dates range for the records obtained.

The undersigned finds that the ALJ reasonably determined that Stephanie W. was not disabled, as she remained capable of performing a limited range of sedentary-level work during the relevant period. The ALJ acknowledged Stephanie W.'s claims of total disability, but found that "the objective record [did] not support the degree of limitation alleged." (Docket No. 10-12 at ECF p. 18).

With regards to her endometriosis, the ALJ noted that it improved "significantly" with treatment. (*Id.*). In support, the ALJ cited Stephanie W.'s September 2016 statement that the condition was "no longer a concern." (*Id.*). *See Labonne v. Astrue*, 341 F. App'x 220, 225 (7th Cir. 2009) (noting that a plaintiff's improved condition "undermined her account of the extent of her limitations"). She also reported that medication helped control her symptoms. (*Id.*). A claimant is not disabled if her condition is controllable by medication or other treatment. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). The ALJ acknowledged that any ongoing symptoms that Stephanie W. experienced due to her endometriosis were addressed in the RFC. (Docket No. 10-12 at ECF p. 19). In her brief, Stephanie W. does not point to any evidence to support an argument that the RFC was insufficient to address her endometriosis symptoms. The ALJ cited medical records from Dr. Morrison, ultrasound results, improvement with medication, and normal examination results. (*Id.* at ECF pp. 16–18). The ALJ's determination is supported by "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

With regards to Stephanie W.'s shoulder pain and limitation, the ALJ explained that the restriction on her right arm reaching, pushing, and pulling was sufficient to accommodate her shoulder issues. (Docket No. 10-12 at ECF p. 18). In support, the ALJ cited Stephanie W.'s medical records, including her treatment with Orthopaedic Associates, where there was no evidence of atrophy or deformity, though there was trace tenderness over the right acromion, and her strength was 4/5. (*Id.* at ECF pp. 12–13; Docket No. 10-8 at ECF p. 78; Docket No. 10-9 at ECF p. 56). The ALJ cited the MRI of Stephanie W.'s shoulder that showed tendinosis, but no tearing. (Docket No. 10-12 at ECF p. 14). Likewise, the ALJ cited Stephanie W.'s 2015 treatment at the Advanced Pain Clinic, and the March 2019 MRI of her right shoulder that showed no acute fracture or dislocation, though there was a subtle abnormality of the acromion from an old healed fracture. (*Id.* at ECF p. 18). Based on the review of all the clinical evidence and physical examination, the ALJ reasonably concluded that the restrictions included in the RFC would sufficiently accommodate her shoulder pain and limitation. (*Id.* at ECF p. 10). No doctor opined to greater limitations than the ALJ included in the RFC. *See Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ.") (internal quotation marks and citation omitted). In her brief, Stephanie W. does not point to any evidence indicating that greater limitations were warranted. She suggests that she is not able to use her hands for simple tasks, but the records do not support that allegation. Rather, the records show a reduced range of motion in her right shoulder and a former fracture, but they do not support a claim that she could not use her hands. (Docket No. 10-8 at ECF p. 79; Docket No. 10-9 at ECF p. 56; Docket No. 10-19 at ECF p. 76, 83). And, Stephanie W. again reported significant pain relief when she underwent injections. (Docket No. 10-10 at ECF p. 73).

15

Next, as to Stephanie W.'s back impairment, there is no dispute that her condition was severe; the ALJ listed both back and neck degenerative disc disease as severe impairments at step two. (Docket No. 10-12). The ALJ restricted Stephanie W. to the most limited category of work—sedentary—and allowed her to sit for up to six hours of a workday, and never carry more than ten pounds. (*Id.* at ECF p. 10). The ALJ determined that these restrictions, and others, accounted for Stephanie W.'s back pain. He acknowledged Stephanie W.'s low back issues had progressed from his previous review, which supported his reduction of her RFC to sedentary work. (*Id.* at ECF p. 18). The ALJ noted that Stephanie W.'s neurosurgeon did not think she was a good candidate for surgery and that despite positive findings, like decreased range of motion and positive straight leg tests, Stephanie W. maintained good motor strength in her legs and she often walked with a normal gait and without assistive device. (*Id.* at ECF p. 18). Stephanie W. offers no evidence in support of her challenge of the ALJ's determination. Substantial evidence supports the ALJ's determination and this court should uphold it.

Finally, Stephanie W. argues that the ALJ did not develop a complete medical record, namely that the records from Advanced Pain Care Clinic, Dr. Jim, and circa 2009 notes from Dr. Khan were missing. The ALJ must develop a full and fair record. *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)*v*. Where the claimant is unrepresented by counsel, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* However, "a significant omission is usually required before [the court] will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). In other words, the omission must be prejudicial.

16

As the ALJ discussed in his determination, he considered new medical records per the previous decision of this court and the Appeals Council Order. (Docket No. 10-12 at ECF pp. 28-31). That new medical evidence was discussed at the administrative hearing in May 2019, and the ALJ explained that he would review new records from Tri-State Orthopaedic, Deaconess Hospital, and Dr. Mike Chou. (*Id.* at ECF p. 73). Those records appear in the administrative record and the ALJ considered them. (*Id.* at ECF p. 18; Docket No. 10-19 at ECF pp. 75–78 (Tri-State Orthopaedics); Docket No. 10-19 at ECF pp. 81–87 (Deaconess Hospital); Docket No. 10-20 at ECF pp. 4-23 (Records from Mike Chou, M.D.)).

Contrary to Stephanie W.'s argument, records from Advanced Pain Care appear in the record. (Docket No. 10-10 at ECF pp. 67–77). While she argues that there are records missing from "Dr. Jim" at Advanced Pain Care, the record shows that Advanced Pain Care submitted all of her records from 2008 through April 2016. (*Id.* at ECF pp. 66). Finally, Stephanie W. argues there are no circa 2009 records from Dr. Khan. The ALJ did review records from Dr. Khan that dated December 13, 2013 to May 16, 2014. (Docket No. 10-9 at ECF pp. 55–59). Stephanie W. does not describe the missing records, nor explain what information they contained that would alter the ALJ's determination. She also did not discuss these missing records at the May 2, 2019 hearing. (Docket No. 10-12 at ECF pp. 40–84). Dr. Khan's circa 2009 records were discussed at the April 19, 2016 hearing, which was held prior to this ALJ's first decision, which was later remanded by this court. (Docket No. 10-2 at ECF p. 43). The ALJ advised Stephanie W. that Dr. Khan's 2000-2010 records were before the relevant period, due to the previous ALJ's denial of Stephanie W.'s 2012 application. (*Id.* at ECF p. 36, 43). Stephanie W. did not raise this issue of Dr. Khan's 2009 records in her original appeal. *Stephanie W. v. Berryhill*, 3:17-cv-00105-RLY-MPB (Docket No. 26). That appeal was remanded due to the ALJ's failure to obtain Dr.

17

Morrison's records. *Stephanie W. v. Berryhill*, 3:17-cv-00105-RLY-MPB (Docket No. 33) ("While the ALJ did assist Plaintiff with the development of the record by obtaining evidence from several providers, for reasons that are unclear to the court, Dr. Morrison's treatment records were never attained or added to the administrative record before the ALJ made his decision.") (internal citations omitted).

Given that Stephanie W. fails to explain how Dr. Khan's pre-2009 records would have made a difference, that she did not raise the issue in her original appeal, and that she did not raise Dr. Khan's records at the May 2, 2019 hearing, Stephanie W. cannot show that the ALJ erred with respect to Dr. Khan's notes. Moreover, the 2012 ALJ decision discusses Dr. Khan's earlier medical records (Docket No. 10-4 at ECF p. 13) and that record did not lead to a finding that plaintiff was eligible for benefits. Hence, it is difficult for the undersigned to understand how unspecified materials that pre-dated the 2012 denial of benefits would change the decision on Stephanie W.'s current application for benefits. Thus, the court concludes that the ALJ did not err in not obtaining these records, let alone create a "significant omission" requiring remand. The undersigned recommends that the ALJ's decision should be upheld.

### V.    Conclusion

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 26th day of May, 2020.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

18

**DISTRIBUTION:**

U.S. Mail to:
STEPHANIE WILSON
1039 E Powell
Evansville, IN 47714


Served electronically on all ECF-registered counsel of record.